[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-12653

_____

D.C. Docket No. 4:11-cv-00010-RHB-CAS

ACE PATTERSON,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(January 29, 2016)

Before WILLIAM PRYOR, and JORDAN, Circuit Judges, and HAIKALA,[*]
District Judge.

JORDAN, Circuit Judge.

---

[*] Honorable Madeline Hughes Haikala, United States District Judge for the Northern District of
Alabama, sitting by designation.

Ace Patterson, a Florida prisoner, appeals the district court's dismissal of his habeas corpus petition, filed pursuant to 28 U.S.C. § 2254, as second or successive under 28 U.S.C. § 2244(b).  As we explain, under our prior decision in *Insignares v. Secretary*, 755 F.3d 1273 (11th Cir. 2014), Mr. Patterson's § 2254 petition is not second or successive within the meaning of § 2244(b).  We therefore reverse.

## I

In 1998, a Florida jury convicted Mr. Patterson of burglary, aggravated kidnapping of a child, and two counts of capital sexual battery.  The trial court sentenced Mr. Patterson to 311 months of imprisonment for the burglary and aggravated kidnapping offenses, and consecutive terms of life imprisonment plus chemical castration for the sexual battery offense.  His convictions and sentences were affirmed on direct appeal.

Approximately nine years later, in 2007, Mr. Patterson filed a habeas corpus petition pursuant to § 2254.  The district court dismissed it as untimely that same year.

After that dismissal, Mr. Patterson filed a motion to correct an illegal sentence with the state trial court under Florida Rule of Criminal Procedure 3.800(a).  Mr. Patterson argued in his motion that his sentence of chemical castration was illegal because the trial court had not complied with the statutory requirements of the chemical castration statute, Fla. Stat. § 794.0235.  According

to Mr. Patterson, the trial court failed to consult a medical expert to determine whether he was an appropriate candidate for chemical castration and failed to specify the duration of the treatment. *See Houston v. State*, 852 So. 2d 425, 428 (Fla. 5th DCA 2003) (explaining that appointing an expert and specifying the duration of treatment are "mandatory requirements" of the chemical castration statute).

In its response, the State conceded the facial sufficiency of the motion and did not oppose Mr. Patterson's request to correct the illegal sentence given the consecutive life terms that had been imposed. On December 14, 2009, the state trial court entered an order granting Mr. Patterson's Rule 3.800 motion. The order repeated all of the sentences initially imposed on Mr. Patterson, and stated that Mr. Patterson would "not have to undergo [m]edroxyprogesterone [a]cetate (MPA) injection, also known as 'Chemical Castration' as previously ordered by the Court at his sentencing in the above styled matter."

Following entry of the new order, Mr. Patterson filed a new § 2254 habeas corpus petition. The district court dismissed this petition as "second or successive" under § 2244(b)(1) because Mr. Patterson had previously filed a habeas corpus petition that had been dismissed as untimely. We granted Mr. Patterson a certificate of appealability to determine whether the state court order deleting

3

chemical castration from his sentence resulted in a new judgment, such that his current habeas corpus petition is not second or successive.

## II

Whether a petition for a writ of habeas corpus is second or successive is a question we consider *de novo*. *See Stewart v. United States*, 646 F.3d 856, 858 (11th Cir. 2011). Generally, subject to exceptions not relevant here, claims presented in a second or successive § 2254 petition are subject to dismissal. *See Insignares*, 755 F.3d at 1278 n.4 ("Subject to two exceptions, § 2244(b) provides that '[a] claim presented in a second or successive habeas corpus application under section 2254 . . . shall be dismissed.'"). Unfortunately, § 2244(b) does not explain what constitutes a second or successive habeas petition. *See id.* at 1278.

The Supreme Court stepped into the statutory void in *Magwood v. Patterson*, 561 U.S. 320, 332–33 (2010), and held that "the phrase 'second or successive' must be interpreted with respect to the judgment challenged." The Court ruled that "where . . . there is a new judgment intervening between two habeas petitions, an application challenging the resulting new judgment is not second or successive." *Id.* at 341. Put more simply, "the existence of a new judgment is dispositive." *Id.* at 338. And the judgment is what "authorizes the prisoner's confinement." *Id.* at 332.

Mr. Patterson contends that his current § 2254 petition is not second or successive because it is his first petition challenging the new judgment generated by the order  deleting chemical castration from his original sentence.  He argues that because the state trial court substantively amended his sentence to remove the punishment of chemical castration, he is now in custody pursuant to a new judgment.   He contends, therefore, that his current habeas corpus petition challenging this new judgment is not second or successive under *Magwood*.  Based on our prior decision in *Insignares*, we agree with Mr. Patterson.

## A

A Florida jury convicted Mr. Insignares of attempted first-degree murder with a firearm, resulting in a sentence of 40 years of imprisonment, including a 20-year mandatory minimum; criminal mischief, resulting in a concurrent sentence of five years of imprisonment; and discharging a firearm in public, resulting in a concurrent sentence of one year of imprisonment.  *See Insignares*, 755 F.3d at 1276.  The trial court later reduced Mr. Insignares' sentence for attempted first-degree murder from 40 years to 27 years, and a state appellate court set aside the criminal mischief conviction.  That left Mr. Insignares with a 27-year sentence (including a 20-year mandatory minimum) for his attempted murder conviction, and a concurrent one-year sentence for his discharge of a firearm conviction.  *See id.*

5

In 2007, following state post-conviction proceedings, Mr. Insignares filed his first § 2254 habeas petition.  That petition was dismissed by the district court as untimely, and we dismissed Mr. Insignares' appeal from that dismissal for failure to prosecute.  *See id.* at 1277.  After that dismissal, Mr. Insignares—like Mr. Patterson here—filed a motion with the state trial court to correct an illegal sentence under Rule 3.800.  *See id.*  In 2009, the state trial court granted that motion and issued a new judgment reducing Mr. Insignares' mandatory-minimum sentence for the attempted-murder conviction from 20 years to 10 years, and otherwise leaving his convictions and remaining sentences intact.  *See id.*  As a result of the state trial court's Rule 3.800 order Mr. Insignares had a shorter mandatory minimum sentence, but his total custodial sentence of 27 years remained the same.

In 2011, following the entry of a corrected sentence and new judgment by the state trial court, Mr. Insignares—like Mr. Patterson here—filed another § 2254 habeas petition in the district court.  *See id.*  Mr. Insignares—like Mr. Patterson here—asserted claims related to his initial convictions, and did not contend that there was anything wrong with the new judgment itself.  *See id.* ("Notably, [Mr. Insignares] alleged the same errors in his 2007 [first habeas] petition as he has in his second habeas petition.").

6

Applying the Supreme Court's decision in *Magwood,* the district court determined that Mr. Insignares' new habeas corpus petition was not second or successive, and denied the petition on the merits. *See id.* On appeal, the State argued that, "[b]ecause [Mr.] Insignares had filed a federal habeas petition in 2007 challenging his conviction and raising the same issues as [in] his 2011 petition," the later petition was second or successive and the district court did not have jurisdiction to adjudicate it. *See id.* at 1278. We rejected the State's argument.

Relying on *Ferreira v. Secretary*, 494 F.3d 1286, 1288 (11th Cir. 2007), we affirmed the district court's determination that Mr. Insignares' new habeas corpus petition was not "second or successive" under *Magwood.* We held that "[t]he 2009 resentencing by the state judge resulted in a new judgment, and [Mr. Insignares' 2011 petition was the] first federal challenge to that 2009 judgment." *Insignares*, 755 F.3d at 1281. And we did so even though the new judgment was beneficial to Mr. Insignares and even though the claims asserted by Mr. Insignares challenged his initial convictions and not the new judgment. *See id.* at 1277.

We declined to follow the Seventh Circuit's decision in *Suggs v. United States*, 705 F.3d 279, 282–284 (7th Cir. 2013), which concluded that a second motion to vacate is "second or successive," even where the defendant has been resentenced, if the motion attacks the underlying conviction and not the new sentence. We phrased our holding as follows: "[W]hen a habeas petition is the first

to challenge a new judgment, it is not 'second or successive' regardless of whether its claims challenge the sentence or the underlying conviction." *Id.* at 1281. We then addressed Mr. Insignares' claims (several claims of ineffective assistance of counsel, a claim that a juror had been sleeping at trial, and a claim of cumulative error) and rejected them on the merits, even though the first habeas petition asserting those same claims had been previously dismissed as untimely. *See id.* at 1282–84.

A "basic principle of justice [is] that like cases should be decided alike," *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005), and we find no meaningful distinction between Mr. Insignares' case and Mr. Patterson's case. Just as Mr. Insignares' initial § 2254 petition was dismissed for untimeliness, so too was Mr. Patterson's initial § 2254 petition. Just as Mr. Insignares filed a motion with the state trial court to correct his illegal sentence under Rule 3.800, so too did Mr. Patterson. Just as the state trial court granted Mr. Insignares' motion to correct, substantively amending a part of the sentence but leaving Mr. Insignares' remaining convictions and total custodial sentences intact, so too did the state trial court here grant Mr. Patterson's motion to correct, substantively vacating a portion of the sentence but leaving Mr. Patterson's remaining convictions and total custodial sentences intact. Just as Mr. Insignares benefitted from the new sentence, so too did Mr. Patterson benefit from the new sentence. And just as the second

8

habeas petition filed by Mr. Insignares asserted claims related to his underlying convictions (and not to the new sentence), so too did the second habeas petition filed by Mr. Patterson assert claims related to his underlying convictions (and not to the new sentence).    As in *Insignares*, the state trial court's grant of Mr. Patterson's Rule 3.800 motion and its vacatur of the punishment of chemical castration from the original sentence constituted a resentencing that resulted in a new judgment, even though Mr. Patterson's total custodial term (life in prison) remained the same, and even though the current habeas corpus petition challenges only the underlying convictions.

**B**

The State contends that *Insignares* is distinguishable for two reasons.    We are not persuaded.

First, the State argues that, unlike the situation in *Insignares*, Mr. Patterson was not resentenced.    Instead, the state trial court merely barred the Department of Corrections from carrying out a portion of Mr. Patterson's initial judgment and sentence.    We do not see the distinction.

Initially, Mr. Patterson's sentence consisted of a term of 311 months of imprisonment for his burglary and aggravated kidnapping convictions, as well as consecutive terms of life imprisonment *plus* chemical castration for his sexual battery convictions.    The total sentence not only authorized the Department of

9

Corrections to incarcerate Mr. Patterson, but also, at its discretion, to chemically castrate him by administering MPA during his term of incarceration. *See* Fla. Stat. § 794.0235(2)(b) ("In all cases involving defendants sentenced to a period of incarceration, the administration of treatment with medroxyprogesterone acetate (MPA) shall commence not later than one week prior to the defendant's release from prison or other institution."). The State concedes in its brief that the administration of MPA "is a part of the defendant's . . . sentence," *see* Appellee's Brief at 27, and we accept that concession because it is consistent with Florida law. Indeed, *Tran v. State*, 965 So. 2d 226, 229 (Fla. 4th DCA 2007), holds that chemical castration is not for medical treatment and constitutes "part of the defendant's punishment and sentence."

Following entry of the state trial court's Rule 3.800 order vacating the chemical castration portion of Mr. Patterson's sentence, the Department of Corrections was no longer authorized to chemically castrate him through the administration of MPA. It was, in other words, not able to carry out one of the punitive measures permitted by Florida law and initially imposed by the trial court at sentencing. The Rule 3.800 order, together with the 1998 judgment, are what currently "authoriz[e] [Mr. Patterson's] confinement." *Magwood*, 561 U.S. at 332.

We fail to understand how an order vacating the punishment of chemical castration—a recognized part of Mr. Patterson's original sentence under Florida

law—can be considered anything but a resentencing. Indeed, the State admitted at oral argument that, in implementing the sentence, the Department of Corrections must abide by the trial court's Rule 3.800 order and therefore cannot administer MPA to Mr. Patterson. *Cf. Murphy v. United States*, 634 F.3d 1303, 1314 (11th Cir. 2011) (stating that a resentencing occurs "where an old sentence is invalidated and replaced with a new one"). Accordingly, we are not swayed by the State's first argument. *See* H. Friendly, *Indiscretion About Discretion*, 31 Emory L. J. 747, 758 (1982) ("the jurisprudential rule of like treatment demands consistency not only between cases that are precisely alike but among those where the differences are not significant").

Second, the State says that *Insignares* is distinguishable because in that case, after granting the Rule 3.800 motion, the state trial court entered a "corrected sentence and new judgment." *Insignares*, 755 F.3d at 1277. The State asserts that here there is only one judgment in the record—the one rendered in 1998—and it contends that, because the state trial court did not enter a new judgment in Mr. Patterson's case following its grant of Rule 3.800 relief, *Insignares* does not apply.

Again, we are not convinced. For starters, Florida law requires *only* that a "judgment of guilty" or "not guilty . . . be rendered . . . in writing, signed by the judge, filed, and recorded." Fla. R. Crim. P. 3.670. With regards to a defendant's sentence, Florida Rule of Criminal Procedure 3.700 requires *only* that "[e]very

11

sentence . . . be pronounced in open court . . . [and] [t]he final disposition of every case [ ] be entered in the minutes in courts which minutes are kept and . . . docketed in courts that do not maintain minutes." Florida Rule of Criminal Procedure 3.986 provides a sample "uniform Judgment and Sentence form," but "[n]either Rule 3.986 nor any other rule makes the completion and filing of the authorized form of judgment and sentence a condition to a valid sentence." *Flowers v. State*, 351 So. 2d 387, 389 (Fla. 1st DCA 1977). Indeed, under Florida law even the requirement that a judgment of guilt be rendered in writing "should not be read as suspending the effect of the sentence pronounced in open court until the paper is filed." *Id.* In other words, under Florida law a sentencing (or resentencing) order need not be documented in a formal separate judgment to be effective. Thus, the mere fact that the state trial court here did not, in addition to issuing its Rule 3.800 order, enter a new judgment does not affect the validity of its resentencing of Mr. Patterson, and it is not determinative of whether a new judgment exists under *Magwood* and *Insignares.*[1]

---

[1] Imagine a scenario where a Florida state court sentences a defendant convicted of fraud to 10 years in prison at hard labor. After being forced to do hard labor for a year, the defendant files a Rule 3.800 motion to correct an illegal sentence, arguing that the hard labor portion of the original sentence violates the Eighth Amendment. The state trial court agrees, and issues an order deleting the hard labor aspect of the initial sentence and telling the prison authorities that they can no longer require the defendant to perform hard labor. Although the state trial court does not enter a new separate judgment without the hard labor condition, its order deleting that punitive condition is a resentencing which constitutes a new judgment under *Magwood* and *Insignares*.

To accept the State's argument would be to make the form that a new judgment takes—rather than its substance—dispositive.  If we were to accept the State's view—that it is the entry of a new separate paper judgment (and only the entry of a new separate paper judgment) that results in a "new judgment" under *Magwood* and *Insignares*—then a state trial court's correction of a simple clerical error through the entry of a new separate paper judgment (for example, replacing "500 months in prison" with "50 months in prison" to correct a typographical error) would necessarily result in a new judgment giving a defendant a new opportunity to seek federal habeas relief.  We have already rejected the notion that the mere issuance of a revised paper judgment under such circumstances necessarily constitutes a resentencing.  *See   United States v. Portillo*, 363 F.3d 1161, 1165 (11th Cir. 2004) (holding that the correction of a clerical error that is "minor and mechanical in nature" in a sentence under Federal Rule of Criminal Procedure 36 does not result in the entry of a new criminal "judgment" under Federal Rule of Appellate Procedure 4(b)(1)(A)).

We do not think the Supreme Court intended for *Magwood* to extend that far, and thereby conflict with the central purpose behind AEDPA's restrictions on the filing of second or successive petitions—that of "ensur[ing] greater finality of state and federal court judgments in criminal cases[.]"  *Gonzalez v. Secretary*, 366 F.3d 1253, 1269 (11th Cir. 2004), *aff'd on other grounds sub nom. Gonzalez v.*

13

*Crosby*, 545 U.S. 524 (2005). Where state court orders are concerned, principles of federalism and comity counsel against federal courts insisting that a state trial court use a particular method (or piece of paper) to render a criminal judgment. Given the potential variety of forms of criminal judgments available in state criminal justice systems, a federal rule for determining successiveness should and must be based on the substance, and not the merely the form, of a trial court's sentencing order.

For all of these reasons, we believe the appropriate approach is to focus on the legal error corrected by, and the substantive effect of, the state trial court's Rule 3.800 order. As we emphasized in *Insignares*, "courts must look to the *judgment* challenged to determine whether a petition is second or successive." *Insignares*, 755 F.3d at 1278 (emphasis in original). And we have previously explained, in the context of applying AEDPA's one-year statute of limitations, that "the judgment to which AEDPA refers is the underlying conviction and most recent sentence that authorizes the petitioner's current detention." *Ferreira*, 494 F.3d at 1292.

Where a state court corrects a legal error in an initial sentence, and imposes a new sentence that is substantively different than the one originally imposed, there is a new judgment under *Magwood* and *Insignares*. Here, the initial imposition of the punishment of chemical castration was erroneous under Florida law, and the

14

subsequent removal of that punishment substantively altered the punitive terms of Mr. Patterson's custody.  So the original 1998 judgment, standing alone, no longer accounts for the authority of the Department of Corrections to detain and exert control over Mr. Patterson.  Instead, as the State admits, one must now look to the original 1998 judgment, together with the 2009 order removing the punishment of chemical castration, in order to determine Mr. Patterson's present and legally authorized sentence. *See Magwood*, 561 U.S. at 332 ("A § 2254 petitioner is applying for something: His petition 'seeks invalidation (in whole or in part) of the judgment authorizing the prisoner's confinement.'"). *Cf.* B. Garner, Garner's Dictionary of Legal Usage 495 (3d ed. 2011) (defining an American judgment as "the final decisive act of a court in defining the rights of the parties").  Because this is Mr. Patterson's first § 2254 petition challenging this new judgment, we conclude that it is not "second or successive" under § 2244(b).

## C

The Fifth Circuit's decision in *In re Lampton*, 667 F.3d 585 (5th Cir. 2012), is not to the contrary.  Mr. Lampton, a federal prisoner, was convicted by a jury of, among other things, one count of conspiracy to distribute heroin and marijuana and one count of engaging in a continuing criminal enterprise.  The district court sentenced him to concurrent life sentences for each conviction.  The district court, however, later granted in part Mr. Lampton's motion to vacate under 28 U.S.C. §

15

2255, ruling that his convictions violated the constitutional prohibition against double jeopardy. The district court vacated Mr. Lampton's conspiracy conviction and sentence, leaving in place the continuing-criminal-enterprise conviction and the life sentence for that conviction.

Mr. Lampton then filed a second § 2255 motion, arguing that under *Magwood* his motion was not second or successive because it was his first § 2255 motion challenging his amended judgment. He argued that, because the district court granted his first § 2255 motion, he was now in custody pursuant to a new, amended judgment and this was his first § 2255 motion challenging that new, amended judgment. The Fifth Circuit disagreed with Mr. Lampton and held that, where a first collateral attack results in the vacatur of a conviction and sentence for a lesser-included offense, which has the same concurrent sentence as the conviction for the greater offense (which remains valid), the granting of the first collateral attack does not yield a new judgment.

The Fifth Circuit reached this result, in part, because despite the amended judgment, Mr. Lampton still had to serve a life sentence on the continuing-criminal-enterprise conviction that was imposed by the original judgment entered by the district court. Mr. Lampton's punishment, in other words, did not change. "[T]he rule announced in *Magwood* applies only when a new sentence was imposed as a result of the first habeas proceeding." *Id.* at 589. Because no new

16

sentence was imposed as a result of Mr. Lampton's initial § 2255 motion, the Fifth Circuit concluded that his prior § 2255 petition did not yield a new judgment of conviction. "Whether a new judgment has intervened between two habeas petitions, such that the second petition can be filed without th[e] [c]ourt's permission, depends on whether a new sentence has been imposed." *Id.* at 589 (citing *Burton v. Stewart*, 549 U.S. 147, 156 (2007) ("Final judgment in a criminal case means sentence. The sentence is the judgment.")). In Mr. Lampton's case, the "sentence on the [continuing-criminal-enterprise] conviction remained intact after the initial § 2255 proceeding was completed." *Id.* at 589. Because "no new sentence was imposed[,] [t]he less fundamental change made to [Mr.] Lampton's judgment of conviction [was] not enough to allow him to bypass AEDPA's restrictions on piecemeal habeas litigation." *Id.* at 590.[2]

Here, unlike the situation in *Lampton*, the state trial court's Rule 3.800 order substantively changed Mr. Patterson's sentence. The order eliminated the

---

[2] The Fifth Circuit also reached this result based upon its own circuit precedent, which it concluded did not require the district court to enter a new judgment as to the remaining counts in a multi-count conviction after one of the counts was vacated. *See Lampton*, 667 F.3d at 588-89 ("It has long been the law of this Circuit that where a defendant has been improperly convicted of and sentenced on both a greater offense and a lesser-included offense, 'the proper remedy is to vacate both the conviction and sentence on the included-offense, leaving the conviction and sentence on the greater offense intact.' Thus, when a first habeas petition results in vacatur of the conviction and sentence associated with one count of a multi-count conviction, the district court is not required to enter a new judgment as to the remaining counts. Those convictions and sentences, as well as the judgment imposing them, remain undisturbed."). That scenario is not presented here.

punishment of chemical castration from the initial sentence, and as a result a new sentence was imposed.

Notably, the Fifth Circuit in *Lampton* cited with approval its prior order in *In re Barnes*, No. 11-30319 (5th Cir. June 23, 2011) (per curiam).  In that case, after his first habeas petition was dismissed on limitations grounds, the petitioner later filed a motion in state court to correct his life sentence.  The state court granted the motion and amended the petitioner's life sentence to a 99-year sentence.  The Fifth Circuit held that the petitioner could file another § 2254 petition without obtaining prior authorization under § 2244 "because a new sentence constitutes a new judgment."  *Lampton*, 667 F.3d at 588 (citing *In re Barnes*, slip opinion at 3).

Our holding is consistent with the Fifth Circuit's reasoning in *Lampton*, in that we too conclude that it is Mr. Patterson's new sentence—a sentence that no longer contains a previously imposed punishment —which yields a new judgment. As a result of the state trial court's Rule 3.800 order, the Department of Corrections can no longer chemically castrate Mr. Patterson.  That is, it cannot carry out a punishment that it was previously legally authorized to carry out while Mr. Patterson was in its custody.  This substantive alteration of the punitive terms

of Mr. Patterson's original judgment resulted in a new sentence, which yielded a new judgment.[3]

## D

We respect the passionate dissenting views of our colleague, Judge William Pryor. Yet we suspect that Judge Pryor's real disagreement is with *Magwood* and our prior decision in *Insignares*.

Judge Pryor, for example, complains that our decision allows a state prisoner to raise, in a subsequent federal habeas petition, claims that he failed to assert in his first petition. That complaint, however, should be addressed to the Supreme Court. The Justices who dissented in *Magwood* pointed out that the majority was permitting the exact same thing that Judge Pryor now bemoans. *See Magwood*, 561 U.S. at 343-44 (Kennedy, J., dissenting) ("The Court today decides that a state prisoner who succeeds in his first federal habeas on a discreet sentencing claim may later file a second petition raising numerous previously unraised claims, even if that petition is an abuse of the writ of habeas corpus."). It is not for us to overhaul Supreme Court precedent. *See King v. Morgan*, 807 F.3d 154, 159 (6th Cir. 2015) (explaining that in *Magwood* the majority ruled in favor of the habeas

---

[3] If we are mistaken, and *Lampton* is inconsistent (or in tension) with *Insignares*, our loyalty, of course, is to *Insignares* rather than *Lampton*.

19

petitioner notwithstanding the "animating" purpose of AEDPA – "to cut back on successive habeas challenges").

There is also an aspect of Judge Pryor's dissent that we do not fully understand. Judge Pryor, like the State, says that *Insignares* does not control because in that case the state trial court entered an amended judgment after issuing its Rule 3.800 order. According to Judge Pryor, that separate judgment—which is missing here—makes all the difference, because formalism should reign supreme (even though he acknowledges that under Florida law a separate written judgment is not necessary). But Judge Pryor then apparently endorses an opinion which holds that an amended judgment reducing a sentence under 18 U.S.C. § 3582(c) due to a retroactive guideline amendment is not a new judgment under *Magwood. See White v. United States*, 745 F.3d 834, 836–37 (7th Cir. 2014). So it is unclear whether formalism is the guiding principle, and we are left to guess whether it is a piece of paper, or a vacatur, or a substantive change (or something else altogether) that matters.

If Judge Pryor thinks that *White* is correctly decided, then his characterization of its rationale—that there is no new judgment unless the original judgment is vacated—fits here, for the state trial court's Rule 3.800 order in Mr. Patterson's case set aside, i.e., vacated, the punishment of chemical castration mandated and authorized by the 1998 judgment. Florida courts have long held

20

and recognized that an order granting a Rule 3.800 motion is effective (and appealable) if it imposes a new sentence, thereby putting an end to judicial labor. *See, e.g., State v. Del Valle*, 745 So.2d 541, 542 (Fla. 4th DCA 1999); *Pate v. State*, 908 So.2d 613, 614 (Fla. 2d DCA 2005); *Adams v. State*, 949 So.2d 1125, 1126-27 (Fla. 3d DCA 2007).

Finally, to the extent that Judge Pryor is suggesting that we are in some way trying to undermine AEDPA, such an accusation is as disappointing as it is wrong. As the Seventh Circuit recently noted, *see Kramer v. United States*, 797 F.3d 493, 502 (7th Cir. 2015), reasonable jurists can disagree about what constitutes a new judgment under *Magwood*. We have tried to faithfully apply AEDPA and *Magwood* in light of binding circuit precedent, and that binding circuit precedent is *Insignares*. We believe we have accomplished that task, Judge Pryor's protests notwithstanding.

## III

We reverse the dismissal of Mr. Patterson's habeas corpus petition as second or successive and remand for further proceedings consistent with this opinion. We express no views on Mr. Patterson's claims.

**REVERSED AND REMANDED.**

HAIKALA, District Judge, concurring specially:

Judge Pryor and Judge Jordan have prepared thorough opinions in this case. I have studied both opinions. I agree with Judge Pryor that this case is not hard. I agree with Judge Jordan's analysis of the issue presented to the Court. Like Judge Jordan, I conclude that the rationale of *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273 (11th Cir. 2014), requires reversal. I write separately to address a few points in Judge Pryor's opinion.

In his opinion, Judge Pryor describes Mr. Patterson's reprehensible criminal behavior. Minority Op. at 2-3. There is no doubt that the conduct that gave rise to Mr. Patterson's conviction and sentence is heinous, but that conduct has no bearing upon the legal standard that governs the issue before the Court. As the United States Supreme Court wrote in *Chessman v. Teets*: "On many occasions this Court has found it necessary to say that the requirements of the Due Process Clause of the Fourteenth Amendment must be respected, no matter how heinous the crime in question and no matter how guilty an accused may ultimately be found to be after guilt has been established in accordance with the procedure demanded by the Constitution." 354 U.S. 156, 165 (1957). Stated differently,

> [T]he Constitution upon which this country is founded protects all citizens, even the worst among the citizenry who have engaged in the most reprehensible of acts. In this context, the broad protections of the Constitution therefore turn a blind eye to the individual facts of the underlying crime and instead focus on rights, even the rights of those who gave their victims no such analogous consideration. Such

fundamental fairness in application must inform cases like the one before this Court today, animating the proceedings so that justice, however often slow, is ultimately done. To accept less would be to diminish the Constitution.

*Cooey v. Strickland*, No. 2:04-CV-1156, 2009 WL 4842393, at *102 (S.D. Ohio Dec. 7, 2009).  Similarly, when interpreting and applying a statute, a court must turn a blind eye to the individual facts of the underlying crime if those facts are not relevant to the statutory issue before the court.  To do otherwise would be to abandon objective legal standards for subjective sliding scales.[1]

Judge Pryor also expresses concern that the majority decision may cause "state prisoners [to] have greater access to the writ" and state courts to be more hesitant to correct sentencing errors.  Minority Op. at 19-20.  Respectfully, I do not share these concerns.  If anything, the majority opinion may, as a practical matter, engender fewer writs.  The obvious way to avoid a second writ is to make certain that every criminal judgment fully complies with all procedural and substantive rules that govern the judgment when the judgment is first entered.  Judges are human though, and trial judges – federal and state alike – occasionally make mistakes.  Mistakes have consequences.  To fulfill their obligations, trial judges routinely issue decisions – legally sound decisions – that produce consequences that the judge may wish he or she could avoid, but every judge, by oath, is

---

[1] The Supreme Court followed this principle in *Magwood*.  The defendant in that case murdered an Alabama sheriff just outside of the jail where the sheriff worked.   The state trial court sentenced Mr. Magwood to death for his crime.  *Magwood*, 561 U.S. at 323-24.

23

obligated to "faithfully and impartially discharge and perform all of the duties" of the judicial office.[2]  The notion that a trial judge would refrain from correcting a sentencing error that all of the parties have acknowledged (as is the case here) to avoid a potential habeas petition is repugnant to the judicial office.

Similarly, we must follow binding precedent even when application of that precedent may open the door – however briefly – to a second habeas petition.[3]  As our Circuit has acknowledged, Supreme Court precedent dictates that a criminal judgment is "comprised of both the sentence and conviction." *Insignares*, 755 F.3d at 1281 (discussing and citing *Burton v. Stewart,* 549 U.S. 147, 156 (2007); *Deal v. United States,* 508 U.S. 129, 132 (1993) ("A judgment of conviction includes both the adjudication of guilt and the sentence."); and *Ferreira*, 494 F.3d at 1292 ("[T]he judgment to which AEDPA refers is the underlying conviction and most recent sentence that authorizes the petitioner's current detention.") (alteration in original).  *Insignares* instructs that when a trial court corrects a sentence, even if the revision does not impact the stated term of incarceration and even if the amended sentence benefits the criminal defendant, the trial court renders a new "judgment."  And "when a habeas petition is the first to challenge a new judgment,

---

[2] *See* 28 U.S.C. § 453.

[3] Although the habeas petition at issue is "not subject to AEDPA's restrictions on 'second or successive' petitions, AEDPA's other limitations still apply. For example, '[a] petitioner may not raise in federal court an error that he failed to raise properly in state court in a challenge to the judgment reflecting the error.'  Moreover, previously decided claims may be foreclosed by the law-of-the-case doctrine." *Insignares*, 755 F.3d at 1281 n.9 (quoting *Magwood,* 561 U.S. at 340).

it is not 'second or successive,' regardless of whether its claims challenge the sentence or the underlying conviction." *Insignares*, 755 F.3d at 1281; *see generally* Majority Op. at 4-12. When the trial judge corrected Mr. Patterson's sentence, the judge rendered a new criminal judgment. Mr. Patterson's recent writ is the first following the new judgment; the writ is not second or successive.[4]

Judge Pryor's and Judge Jordan's opinions express an honest disagreement about the import of this Circuit's precedent. I vote with Judge Jordan. As Judge Fay explained in his special concurrence in *Insignares*, "there is language in *Magwood* that indicates [] that the Supreme Court may well take a different tack should it deal with a case like this one." *Insignares*, 755 F.3d at 1285 (Fay, J., concurring specially). "When the Supreme Court has a case exactly like this one, we will know the answer. Until then, we are bound by our precedent in *Ferreira*" and *Insignares*. *Id.*

---

[4] *Insignares* also instructs that "the phrase 'second or successive' applies to habeas *petitions,* not to the *claims* they raise." *Insignares*, 755 F.3d at 1281 (emphasis in *Insignares*).

25

WILLIAM PRYOR, Circuit Judge, dissenting:

Ace Patterson—a child rapist, kidnapper, and burglar—won the habeas lottery today. The majority gives him a second chance to collaterally attack his convictions in federal court, seventeen years after his trial and nine years after he filed his first federal petition for a writ of habeas corpus. Most state prisoners are not so lucky, as the Antiterrorism and Effective Death Penalty Act prohibits the filing of a "second or successive" petition for a writ of habeas corpus. 28 U.S.C. § 2244(b). But Patterson is luckier still. In a sleight of hand, the majority rules that a 2009 order sparing him from chemical castration—an unopposed order that *benefited* Patterson—somehow hit the reset button on his ability to obtain federal habeas relief, even though the 2009 order is not "the judgment authorizing [Patterson's] confinement" and is irrelevant for purposes of the bar on second or successive petitions. *Magwood v. Patterson*, 561 U.S. 320, 332, 130 S. Ct. 2788, 2797 (2010) (emphasis omitted) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 83, 125 S. Ct. 1242, 1248 (2005)). The clear text of the statute makes "the judgment of a State court" that holds the prisoner "in custody" the judgment that matters for our collateral review. 28 U.S.C. § 2254(b)(1). And for good reason. Patterson, after all, does not object to anything in the 2009 order that spared him from chemical castration or allege that the removal of chemical castration somehow violated his federal constitutional rights. He instead seeks to collaterally attack the judgment of

convictions entered against him in 1998—a judgment he has already collaterally attacked once in federal court and four times in state court. And the majority lets him do it. Because that ruling is wrong in every way, I dissent.

## I. BACKGROUND

The majority provides a barebones accounting of the facts and the procedural history of this appeal. But the nature of Patterson's crimes, the trauma he caused the victim, and his repeated and often frivolous collateral attacks vividly illustrate why the Antiterrorism and Effective Death Penalty Act bars second or successive petitions. Here's the rest of the story.

Ace Patterson is a prisoner in the custody of the Secretary of the Florida Department of Corrections. In 1997, he visited his cousin and his cousin's fiancée at their home in Madison County, Florida. There, Patterson was introduced to the couple's eight-year-old daughter before she went to bed. Patterson ate dinner and spent time with the couple and then left for the night. But he later returned uninvited.

In the middle of the night, Patterson broke into his cousin's home, lifted his cousin's sleeping eight-year-old daughter out of her bed, and carried her outside. Patterson dropped her in a dirty area of the woods and raped her. When she tried to scream, Patterson gagged her by sticking his fingers down her throat. When she tried to escape, Patterson grabbed her leg, dragged her back into the dirt, and raped

27

her again. After the assault, the girl found her way back home. Her parents awoke to the sound of their eight-year-old daughter knocking on the front door—crying, covered in dirt, missing a clump of hair, and covered in scratches and bruises. The medical examiners later discovered dirt in her vagina and severe vaginal lacerations.

In 1998, a jury convicted Patterson of burglary, aggravated kidnapping of a child, and two counts of capital sexual battery. The Florida trial court sentenced him to 311 months imprisonment, consecutive terms of life imprisonment, and chemical castration. The 1998 sentence "committed [Patterson] to the custody of the Department of Corrections" and directed the Department to "keep and safely imprison" Patterson for the remainder of his life. A copy of the 1998 sentence is attached as Appendix A to this dissent. Patterson's convictions and sentence were affirmed on direct appeal.

Patterson then initiated a flurry of collateral attacks against his convictions, including four petitions for writs of habeas corpus in state court and an ethics complaint against the prosecutor who tried his case. His efforts failed, and a Florida appellate court warned him that "the filing of any further successive and/or frivolous petitions or appeals may result in the imposition of sanctions." *Patterson v. State*, 788 So. 2d 397 (Fla. Dist. Ct. App. 2001) (mem.).

28

In 2006, Patterson filed his first federal petition for a writ of habeas corpus. He alleged that his convictions were secured in violation of the Due Process Clause of the Fourteenth Amendment, the Self-Incrimination Clause of the Fifth Amendment, and the right to effective assistance of counsel under the Sixth Amendment. The district court dismissed his 2006 petition as untimely. Ordinarily, that decision would have brought closure to the victim of his crimes, who was by then eighteen years old.

Patterson then pursued a different line of attack. Instead of challenging his convictions, he challenged the portion of his sentence that required chemical castration. Patterson filed a motion to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a) on the ground that the trial court did not comply with the statutory prerequisites for chemical castration. The State of Florida and the guardian ad litem for the victim acquiesced in Patterson's motion. With Patterson imprisoned for life, the prosecutor and guardian ad litem understandably viewed chemical castration as a "moot point" and believed that contesting his motion was not worth "expos[ing] the victim to the painful remembrance of the Defendant's actions against her."

In 2009, the Florida trial court granted Patterson's motion in an order that stated, "[T]he Defendant shall not have to undergo [chemical castration] as previously ordered by the Court at his sentencing in the above styled matter." The

29

2009 order did not vacate Patterson's original sentence and replace it with a new one. Nor did it direct the Department of Corrections to hold Patterson or to do any affirmative act. A copy of the 2009 order is attached as Appendix B to this dissent.

After his success in state court, Patterson resumed attacking his 1998 convictions in federal court. In 2011, he filed a second petition for a writ of habeas corpus, which again alleged that his convictions were secured in violation of the Fifth, Sixth, and Fourteenth Amendments. The district court dismissed his 2011 petition as second or successive.

## II. DISCUSSION

After a state prisoner has had a trial, direct appeal, and an opportunity for collateral review in the state courts, he typically gets one, and only one, chance to collaterally attack his conviction in federal court. With exceptions not relevant here, section 2244(b) prohibits a state prisoner from filing a "second or successive" habeas petition. 28 U.S.C. § 2244(b). This prohibition "is grounded in respect for the finality of criminal judgments." *Calderon v. Thompson*, 523 U.S. 538, 558, 118 S. Ct. 1489, 1502 (1998). Finality, in turn, is essential to achieving the goals of our criminal justice system: "Deterrence depends upon the expectation that 'one violating the law will swiftly and certainly become subject to punishment, just punishment.' Rehabilitation demands that the convicted defendant realize that 'he is justly subject to sanction, that he stands in need of rehabilitation.'" *Engle v.*

*Isaac*, 456 U.S. 107, 127 n.32, 102 S. Ct. 1558, 1571 n.32 (1982) (quoting Paul M.

Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners*,

76 Harv. L. Rev. 441, 452 (1963); Henry J. Friendly, *Is Innocence Irrelevant?*

*Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 146 (1970)).

Finality also "benefits the victim by helping [her] put the trauma of the crime and

prosecution behind [her]." *Presnell v. Kemp*, 835 F.2d 1567, 1573 (11th Cir. 1988).

Whether a petition is second or successive depends on "the *judgment*

challenged." *Insignares v. Sec'y, Fla. Dep't of Corr.*, 755 F.3d 1273, 1278 (11th

Cir. 2014). The judgment that matters for purposes of section 2244 is "the

judgment authorizing the prisoner's confinement." *Magwood*, 561 U.S. at 332, 130

S. Ct. at 2797 (emphasis omitted) (quoting *Dotson*, 544 U.S. at 83, 125 S. Ct. at

1248); *see also Burton v. Stewart*, 549 U.S. 147, 156, 127 S. Ct. 793, 798 (2007)

(explaining that the judgment for purposes of section 2244 is "the judgment

pursuant to which [the prisoner] [i]s being detained"); *Insignares*, 755 F.3d at 1281

("[T]he judgment to which AEDPA refers is the underlying conviction and most

recent sentence that *authorizes the petitioner's current detention*." (alteration in

original) (emphasis added) (quoting *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d

1286, 1292 (11th Cir. 2007))). This conclusion follows from the text of the statute.

Section 2244(b) refers to second or successive petitions "under section 2254," 28

U.S.C. § 2244(b), and section 2254 governs petitions that challenge "the judgment

31

of a State court" "pursuant to" which the prisoner is "in custody," *id.* § 2254. Accordingly, the bar on second or successive petitions ordinarily prevents a prisoner from twice contesting the judgment authorizing his confinement. *See Burton*, 549 U.S. at 153, 127 S. Ct. at 796.

A petition is not second or successive if it challenges a "new judgment" issued after the prisoner filed his first petition. *Magwood*, 561 U.S. at 324, 130 S. Ct. at 2792. But, again, the new judgment must be a new "judgment authorizing the prisoner's confinement." *Id.* at 332, 130 S. Ct. at 2797 (emphasis omitted) (quoting *Dotson*, 544 U.S. at 83, 125 S. Ct. at 1248). For example, in *Magwood*, a prisoner filed his first habeas petition, and the district court granted it and vacated his sentence. *Id.* at 326, 130 S. Ct. at 2793. The state court then conducted a new sentencing hearing and entered a new sentence. *Id.* When the prisoner filed a second habeas petition, the U.S. Supreme Court held that it was not second or successive because the petition was the prisoner's "*first*" challenge to the new sentence. *Id.* at 339, 130 S. Ct. at 2801. Although the prisoner's second petition restated the same errors as his first petition, the errors he alleged were "*new*." *Id.* At the resentencing hearing, the state court had heard and rejected the prisoner's arguments a second time, and "[a]n error made a second time is still a new error." *Id.*

32

Based on the text of the statute and the precedent of the Supreme Court, this case should have been easy. The judgment requiring Patterson's confinement is the sentence entered in 1998. That judgment "committed [Patterson] to the custody of the Department of Corrections," and that commitment has never been vacated or replaced. Patterson challenged that judgment in his 2006 petition for a writ of habeas corpus. When the 2006 petition was dismissed as untimely, Patterson lost his one chance to obtain federal habeas relief. *See Murray v. Greiner*, 394 F.3d 78, 81 (2d Cir. 2005) ("[D]ismissal of a § 2254 petition for failure to comply with the one-year statute of limitations constitutes an adjudication on the merits that renders future petitions under § 2254 challenging the same conviction 'second or successive' petitions under § 2244(b)."). Because Patterson's 2011 petition tries to challenge the 1998 sentence a second time, it should be dismissed as second or successive.

The majority contends that the 2009 order sparing Patterson from chemical castration is a "new judgment" that renders the 2011 petition not second or successive, Majority Op. at 5, but the majority ignores the plain text of the statute. The presence of an intervening judgment or sentence is irrelevant on its own; a new judgment counts for purposes of section 2244 only if it is a new judgment "pursuant to" which the prisoner is "in custody." 28 U.S.C. § 2254; *see Magwood*, 561 U.S. at 332–33, 130 S. Ct. at 2797; *Burton*, 549 U.S. at 156, 127 S. Ct. at 798;

33

*Insignares*, 755 F.3d at 1281. And Patterson is not in custody pursuant to the 2009 order. That order does not *authorize* anything; it instead states, in the negative, that Patterson "shall not have to undergo [chemical castration]." Standing on its own, the 2009 order imposes no sentence and gives the Florida Department of Corrections no authority. The 1998 sentence is the only judgment that allows the Department to detain Patterson. Although the majority asserts that the 2009 order authorizes Patterson's confinement, Majority Op. at 10, the majority never quotes any language from the order that would support such a conclusion.

Because the 2009 order is obviously not the order that authorizes Patterson's confinement, the majority holds that any order that *affects* the judgment authorizing a prisoner's confinement somehow creates a new judgment authorizing his confinement. *Id.* at 14. Requiring the actual entry of a new judgment, the majority contends, would exalt form over substance. *Id.* at 13–14. But if "substance" requires departing from the text of the statute and usurping the role of Congress, count me a formalist. To quote Justice Scalia, "Long live formalism. It is what makes a government a government of laws and not of men." Antonin Scalia, *A Matter of Interpretation: Federal Courts and the Law* 25 (1997).

Indeed, at least two other circuits have embraced the "formalistic" distinction that the majority rejects. The Fifth and Seventh Circuits have held that an order that affects the judgment requiring the prisoner's confinement, but does

not vacate and replace that judgment, does not lift the bar on second or successive petitions. The Fifth Circuit has held that an order partially vacating a sentence is not a new judgment for purposes of the bar on second or successive petitions. *See In re Lampton*, 667 F.3d 585, 589–90 (5th Cir. 2012). In *Lampton*, the federal prisoner filed his first motion to vacate, and the district court granted it in part and entered an order "vacating Lampton's conspiracy conviction and the life sentence that had been imposed based on that conviction." *Id.* at 587. This order did not allow Lampton to file a second or successive motion, Judge Higginbotham wrote, because Lampton's original sentence "remained intact" and the later order did not "impose[]" a "new sentence" or "enter an amended judgment." *Id.* at 589–90. The majority's attempt to distinguish *Lampton* omits the key reasoning of that decision. The point was not that Lampton's sentence "did not change," Majority Op. at 16; it was that a partial vacatur is the type of "less fundamental change" that does not allow a prisoner to "bypass AEDPA's restrictions on piecemeal habeas litigation." *Lampton*, 667 F.3d at 590. Even more on point, the Seventh Circuit has held that an order reducing a prisoner's sentence based on a change in the Sentencing Guidelines, 18 U.S.C. § 3582(c)(2), does not create a new judgment for purposes of the bar on second or successive petitions. *See White v. United States*, 745 F.3d 834, 836–37 (7th Cir. 2014). In *White*, the federal prisoner's first motion to vacate was dismissed, but he later filed a successful motion for a sentencing reduction

35

under section 3582(c)(2). *Id.* at 835. The district court reduced his sentence by 68 months. *Id.* This reduction was not a new judgment, Judge Easterbrook wrote, because "the original judgment [wa]s not declared invalid." *Id.* at 836. Although "White's sentence ha[d] *changed*," the older judgment requiring his confinement was not "vacated" and White was not "resentenced." *Id.* (emphasis added). "*Magwood* does not reset the clock or the count" just because "a prisoner's sentence is reduced." *Id.* at 837. The conflict between these decisions and the majority opinion is plain and makes this appeal a ripe target for the State of Florida to file a petition for a writ of certiorari in the Supreme Court.

Our decision in *Insignares* does not support the majority. True, both Patterson and Insignares filed successful motions to correct an illegal sentence under Florida Rule of Criminal Procedure 3.800(a). But the Florida trial court in *Insignares* went a step further: it also "entered [a] corrected sentence and new judgment." 755 F.3d at 1277. Specifically, three days after it granted Insignares's motion, the Florida trial court issued a "Corrected Sentence" that "committed [Insignares] to the custody of the Department of Corrections" for a term of twenty-seven years. Here, by contrast, the Florida trial court never issued a corrected sentence to replace Patterson's 1998 sentence. It simply issued the 2009 order, which bars the imposition of chemical castration but does not supersede the 1998 sentence. In short, Insignares had an intervening "judgment authorizing [his]

confinement," but Patterson does not. *Id.* at 1279 (emphasis omitted) (quoting

*Magwood*, 561 U.S. at 332, 130 S. Ct. at 2797). For the sake of comparison,

Insignares's second judgment is attached as Appendix C to this dissent.

The majority does not view the difference between this case and *Insignares*

as "meaningful," Majority Op. at 8, but the presence of a new judgment

authorizing the prisoner's confinement is the *only* meaningful difference under the

statute. As we reiterated in *Insignares*, "the existence of a new judgment is

*dispositive*." 755 F.3d at 1280 (emphasis added) (quoting *Magwood*, 561 U.S. at

338, 130 S. Ct. at 2800). And the new judgment must be a new "judgment

authorizing the prisoner's confinement." *Id.* at 1279 (emphasis omitted) (quoting

*Magwood*, 561 U.S. at 332, 130 S. Ct. at 2797). Contrary to the majority opinion,

our decision in *Insignares* never held—or even suggested—that any order affecting

a prisoner's sentence would necessarily constitute a "new judgment" for purposes

of section 2244. Instead, we repeatedly stressed that the Florida trial court had

entered a corrected sentence *after* it granted Insignares's motion under Rule

3.800(a). *See, e.g.*, *id.* at 1281 ("The 2009 resentencing by the state judge *resulted

in a new judgment*." (emphasis added)); *id.* at 1275 ("Because resentencing by the

state judge *resulted in a new judgment*, . . . we conclude Insignares's petition is not

successive." (emphasis added)).

37

I fully appreciate that *Insignares* is the law of this Circuit and binds this panel, whether or not it was correctly decided. *Cf.* Majority Op. at 19. But "opinions are to be read in the light of the facts of the case under discussion" and "[t]o keep opinions within reasonable bounds precludes writing into them every limitation or variation which might be suggested by the circumstances of cases not before the Court." *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S. Ct. 165, 168 (1944). Our decision in *Insignares* addressed a collateral attack on a new judgment authorizing the prisoner's confinement. Extending it to a case like this one where no such judgment exists not only misreads *Insignares* but also conflicts with the plain text of the statute.

Nor is the majority opinion remotely consistent with the purposes of the statute. *Cf.* Majority Op. at 13–14. In what should raise a massive red flag to any student of the history of habeas law, the majority's interpretation makes it *easier* to file a federal habeas petition after the Antiterrorism and Effective Death Penalty Act of 1996 than before that watershed statute was enacted. *See generally Gilbert v. United States*, 640 F.3d 1293, 1310–11 (11th Cir. 2011) (en banc). Before 1996, Patterson's second petition would be considered an "abuse of the writ" because it raises claims that he could have raised in his first petition. *McCleskey v. Zant*, 499 U.S. 467, 498, 111 S. Ct. 1454, 1472 (1991). It would be barred unless Patterson could prove either cause and prejudice or a fundamental miscarriage of justice. *Id.*

at 494–95, 111 S. Ct. at 1470. Yet, the majority allows him to file a second petition when he could prove neither exception—a poor interpretation of a statute that was enacted to promote "greater finality of state . . . court judgments in criminal cases," *Gonzalez v. Sec'y for Dep't of Corr.*, 366 F.3d 1253, 1269 (11th Cir. 2004) (en banc), and to impose "new and tighter limits on successive petitions," *Suggs v. United States*, 705 F.3d 279, 285 (7th Cir. 2013). True, the Antiterrorism and Effective Death Penalty Act partially modifies the doctrine of abuse of the writ when it defines "second or successive" with respect to "the judgment challenged," instead of the "claims" raised. *Magwood*, 561 U.S. at 333–36, 130 S. Ct. at 2797–99. But that textual modification does not apply here because Patterson is raising the same claims *and* challenging the same judgment. Outside of the modification identified in *Magwood*, seven Justices have explained that the doctrine of abuse of the writ should continue to guide our interpretation of section 2244(b). *See id.* at 343, 130 S. Ct. at 2803 (Breyer, J., joined by Stevens and Sotomayor, JJ., concurring in part and concurring in the judgment); *id.* at 344, 130 S. Ct. at 2803–04 (Kennedy, J., joined by Roberts, C.J., and Ginsburg and Alito, JJ., dissenting). The majority opinion does not heed that instruction.

The majority argues that its opinion somehow *promotes* finality, federalism, and comity, Majority Op. at 13–14, but that's a laugher. Leaving aside the fact that the State of Florida argues for the opposite result, the majority opinion will greatly

39

expand the opportunities for federal courts to reopen and reexamine the criminal judgments of state courts. A prisoner will be able to file another petition for a writ of habeas corpus any time a state court issues an order affecting his sentence—for example, an order removing a restitution obligation or a fine, an order reducing a sentence for substantial assistance to the government or based on a reduced sentencing guideline, or an order shortening a term of probation. The majority's rule will not only undermine the bar on second or successive petitions in section 2244(b), but it will also undermine the one-year statute of limitations in section 2244(d) because both provisions use the same definition of "judgment." *See Insignares*, 755 F.3d at 1281. The corresponding blow to the finality of criminal judgments will be substantial. A prisoner in Florida, for example, can forever hold out hope for another round of federal habeas review because Florida allows prisoners to file motions to correct an illegal sentence "at any time." Fla. R. Crim. P. 3.800(a). This ever-looming specter of federal review will torpedo Florida's interest in "insuring that there will at some point be the certainty that comes with an end to litigation, and that attention will ultimately be focused not on whether a conviction was free from error but rather on whether the prisoner can be restored to a useful place in the community." *Isaac*, 456 U.S. at 127, 102 S. Ct. at 1571 (quoting *Sanders v. United States*, 373 U.S. 1, 25, 83 S. Ct. 1068, 1082 (1963) (Harlan, J., dissenting)). And the increase in federal petitions will burden the state

officials who must contest them after the "[p]assage of time, erosion of memory, and dispersion of witnesses." *Id.* at 127, 102 S. Ct. at 1572; *see also McCleskey*, 499 U.S. at 492, 111 S. Ct. at 1469 ("If reexamination of a conviction in the first round of federal habeas stretches resources, examination of new claims raised in a second or subsequent petition spreads them thinner still."). Far from respecting federalism, the majority will place state prosecutors in a double bind: either contest the prisoner's motion for a sentencing alteration, draining precious resources and forcing the victim to relive the crime and prosecution; or acquiesce in the prisoner's motion, triggering another round of federal habeas review and risking the release of the prisoner due to stale evidence. In short, I frankly do not understand how the majority can contend that its opinion is friendly to the interests of federalism, comity, and finality. With friends like these, the states and victims of crime don't need enemies.

The majority offers two additional justifications for its opinion, but both are red herrings. First, the majority explains that Florida law does not require trial judges to enter a written sentence. Majority Op. at 11–12. True, but irrelevant. If the Florida trial court in this case had entered a new judgment authorizing Patterson's confinement in an oral pronouncement, I would not be dissenting. But the Florida trial court did not enter *any* new judgment authorizing Patterson's confinement, orally or otherwise. The majority is knocking down a strawman when

41

they portray my position as a "paper judgment" requirement. *See id.* at 13, 20.

Second, the majority contends that focusing on the entry of a new judgment—

never mind that the statute requires exactly that focus—would mean that

judgments correcting only "clerical" errors would qualify as new judgments. *Id.* at

13. But this argument cannot be taken seriously. We have already held that clerical

corrections do not create a new "judgment" for purposes of Federal Rule of

Appellate Procedure 4(b)(1)(A). *United States v. Portillo*, 363 F.3d 1161, 1165–66

(11th Cir. 2004). We would surely extend this holding to the context of second or

successive petitions under section 2244(b), as we have done already in an

unpublished opinion. *See United States v. Cano*, 558 F. App'x 936, 941 n.6 (11th

Cir.) ("The fact that the district court entered an amended judgment to correct

clerical errors does not result in a new judgment that is exempt from the rules on

second or successive petitions . . . ."), *cert. denied*, 135 S. Ct. 387 (2014); *accord*

*Marmolejos v. United States*, 789 F.3d 66, 71–72 (2d Cir. 2015); *United States v.*

*Ledesma-Cuesta*, 476 F. App'x 412, 412 n.2 (3d Cir. 2012); *In re Martin*, 398 F.

App'x 326, 327 (10th Cir. 2010).

The majority opinion is symptomatic of a disturbing phenomenon in the

federal judiciary: an open disdain for the Antiterrorism and Effective Death

Penalty Act. Recently, three Justices lamented that one of our sister circuits "seems

to have acquired a taste for disregarding AEDPA." *Rapelje v. Blackston*, __ U.S.

42

__, 136 S. Ct. 388, 389 (2015) (Scalia, J., joined by Thomas and Alito, JJ., dissenting from the denial of certiorari). A judge from a different circuit recently criticized the Act as "misconceived at its inception and born of misguided political ambition." Stephen R. Reinhardt, *The Demise of Habeas Corpus and the Rise of Qualified Immunity: The Court's Ever Increasing Limitations on the Development and Enforcement of Constitutional Rights and Some Particularly Unfortunate Consequences*, 113 Mich. L. Rev. 1219, 1221 (2015). And another recently labeled it "a cruel, unjust and unnecessary law" that "has resulted . . . in much human suffering" and "should be repealed." Alex Kozinski, *Criminal Law 2.0*, 44 Geo. L.J. Ann. Rev. Crim. Proc. iii, xlii (2015). But the Antiterrorism and Effective Death Penalty Act is the law of the land and has been for nearly twenty years. The task of rectifying any perceived defects falls to Congress, not unelected judges. "[F]ederal judges must obey" the duly enacted laws of Congress, including the Act, which "some federal judges find too confining." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1701 (2014). And it is no more legitimate to chip away at the Act by exalting its judicially imagined "substance" over its clear textual "form" than it is to ignore the statute entirely. *Cf.* Majority Op. at 13–14.

Aside from ignoring the text of the statute and undermining its purposes, the majority's position could provide a pyrrhic victory for its intended beneficiaries. True, after the majority opinion, state prisoners will have greater access to the writ.

43

But once state officials learn that any change to a prisoner's sentence will trigger another round of federal habeas review, they will be less willing to agree to sentencing alterations that benefit the prisoner. And state courts will be more hesitant to accept their concessions. Judge Haikala's opinion balks at the notion that a state court would decline to correct a conceded "error," Concurring Op. at 3, but that is not my point. Courts have the discretion to accept a prosecutor's concession, in lieu of reaching the merits, in close cases and in cases where no error occurred. *See Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015); *Casey v. United States*, 343 U.S. 808, 808, 72 S. Ct. 999, 999 (1952). But "it has been the sound practice of Florida's courts to not accept improper concessions by the state" when it "might be to the detriment of the victims of crime and/or to the people of the State of Florida," *Reed v. State*, 783 So. 2d 1192, 1196 n.2 (Fla. Dist. Ct. App. 2001), *quashed on other grounds*, 837 So. 2d 366 (Fla. 2002), a possibility that will arise more often after today's decision. Judge Haikala's opinion also predicts that the majority's decision will benefit defendants because an increase in the opportunities for federal habeas review will decrease the number of constitutional errors made in the state courts. *See* Concurring Op. at 2. But the Supreme Court long ago stated the opposite: "Rather than enhancing [constitutional] safeguards, ready availability of habeas corpus may diminish their sanctity by suggesting to the trial participants that there may be no need to adhere

44

to those safeguards during the trial itself." *Isaac*, 456 U.S. at 127, 102 S. Ct. at 1571.

When it comes to federal habeas petitions, the more is not the merrier. Relaxing the bar on second or successive petitions will "prejudice the occasional meritorious application" for a writ of habeas corpus by "bur[ying] [it] in a flood of worthless ones." *McCleskey*, 499 U.S. at 492, 111 S. Ct. at 1469 (quoting *Brown v. Allen*, 344 U.S. 443, 537, 73 S. Ct. 397, 425 (1953) (Jackson, J., concurring in the result)). Despite the best efforts of Congress to prevent that "flood," the majority is praying for rain.

This case is not hard. And nobody should be fooled by the majority's atextual decision. After seventeen years of repeated and often frivolous attempts to overturn his convictions, Patterson is being given another go-round based on an order issued in 2009 that both the State of Florida and the guardian ad litem thought was meaningless. That order does not authorize his confinement, and he does not allege that it violates his constitutional rights. Nor should he: the 2009 order gave him all of the relief that he requested. Today's decision is gimmickry that will require the State of Florida to defend a child rapist's convictions for the umpteenth time and will threaten a twenty-six-year-old woman to relive the horror of his monstrous crimes.

I dissent.

45

# Appendix A

# STATE OF FLORIDA

## UNIFORM COMMITMENT TO CUSTODY
## OF DEPARTMENT OF CORRECTIONS

TIM SANDERS, CLERK

The Circuit Court of _____MADISON_____ County

in the _____Spring_____ Term, 19_98_, in the case of

### STATE OF FLORIDA

### VS

_____Ace R. Patterson_____

**Defendant**

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF FLORIDA, TO THE SHERIFF OF SAID COUNTY AND THE DEPARTMENT OF CORRECTIONS OF SAID STATE, GREETING:

The above name defendant having been duly charged with the offense specified herein in the above styled Court, and he having been duly convicted and adjudged guilty of and sentenced for said offense by said Court, as appears from the attached certified copies of Indictment/Information, Judgment and Sentence, and Felony Disposition and Sentence Data form which are hereby made parts hereof;

Now therefore, this is to command you, the said Sheriff, to take and keep and, within a reasonable time after receiving this commitment, safely deliver the said defendant, together with any pertinent Investigation Report prepared in this case, into the custody of the Department of Corrections of the State of Florida: and this is to command you, the said Department of Corrections, by and through your Secretary, Regional Directors, Superintendents, and other officials, to keep and safely imprison the said defendant for the term of said sentence in the institution in the state correctional system to which you, the said Department of Corrections, may cause the said defendant to be conveyed or thereafter transferred. And these presents shall be your authority for the same. Herein fail not.

WITNESS the Honorable ___JOHN W. PEACH___

Judge of said Court, as also ___TIM SANDERS___

Clerk, and the Seal thereof, this the _____ day of

_____, 19_98_
(Month)

TIM SANDERS _____, CLERK

By: _____
Deputy Clerk

Page _____ of _____ Pages

757

_____ Probation Violator

_____ Community Control Violator

_____ Retrial

_____ Resentence

In the Circuit Court, ___THIRD___ Judicial Circuit,

in and for ___MADISON___ County, Florida

Division ___CIRCUIT CRIMINAL___

Case Number ___97-171-CF___

State of Florida

v.

_Ace R. Patterson_

Defendant

## JUDGMENT

The defendant, _Ace R. Patterson_ , being personally before this court
represented by _Dennis Bothe_ , the attorney of record, and the state
represented by _David W. Fina_ , and having

✓ been tried and found guilty by jury/by court of the following crime(s)

_____ entered a plea of guilty to the following crime(s)

_____ entered a plea of nolo contendere to the following crime(s)

| Count | Crime | Offense Statute Number(s) | Degree of Crime | Case Number | OBTS Number |
|-------|-------|---------------------------|-----------------|-------------|-------------|
| I | Burglary & Battery | 810.02 | 1F PBL | 97-17-CF | 0009846935 |
| II | Aggravated Kidnapping & Child | 787.01(3) | Life felony | 97-171-CF | 5009846935 |
| III & IV | Capital Sexual Battery | 794.011 (2) | Capital Felony | 97-171-CF | 0009846935 |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

XX and no cause being shown why the defendant should not be adjudicated guilty, IT IS ORDERED THAT the defendant is hereby ADJUDICATED GUILTY of the above crime(s).

_____ and pursuant to section 943.325, Florida Statutes, having been convicted of attempts or offenses relating to sexual battery (ch. 794) or lewd and lascivious conduct (ch. 800) the defendant shall be required to submit blood specimens.

_____ and good cause being shown; IT IS ORDERED THAT ADJUDICATION OF GUILT BE WITHHELD.

Defendant _Alex R. Peterson_ Case Number _97-171-CF_ BTS Number _000984 6935_

## SENTENCE

(As to Count ___I___)

The defendant, being personally before this court, accompanied by the defendant's attorney of record, _____
_Dennis Boothe_____, and having been adjudicated guilty herein, and the court having given the defendant
an opportunity to be heard and to offer matters in mitigation of sentence, and to show cause why the defendant should not
be sentenced as provided by law, and no cause being shown

(Check one if applicable.)

____ and the Court having on _____ deferred imposition of sentence until this date
          (date)

____ and the Court having previously entered a judgment in this case on _____ now resentences
     the defendant                                                    (date)

____ and the Court having placed the defendant on probation/community control and having subsequently revoked
     the defendant's probation/community control.

It Is The Sentence Of The Court that:

____ The defendant pay a fine of $_____, pursuant to section 775.083, Florida Statutes, plus $ _____
     as the 5% surcharge required by section 960.25, Florida Statutes.

_XX_ The defendant is hereby committed to the custody of the Department of Corrections.

____ The defendant is hereby committed to the custody of the Sheriff of _____County, Florida.

____ The defendant is sentenced as a youthful offender in accordance with section 958.04, Florida Statutes.
____ The defendant is determined to be a Sexual Predator pursuant to F.S. 775.21 (4)
____ Chemical Castration pursuant to F.S. 794.0325 M.P.A.

To Be Imprisoned (Check one; unmarked sections are inapplicable.):

____ For a term of natural life.

✓ For a term of_____ 311 Months _.

____ Said SENTENCE SUSPENDED for a period of _____ subject to conditions set forth in
     this order.

If "split" sentence, complete the appropriate paragraph.

____ Followed by a period of _____ on probation/community control under the supervision of the
     Department of Corrections according to the terms and conditions of supervision set forth in a separate order entered
     herein.

____ However, after serving a period of _____ imprisonment in _____, the balance
     of the sentence shall be suspended and the defendant shall be placed on probation/community control for a period of
     _____ under supervision of the Department of Corrections according to the
     terms and conditions of probation/community control set forth in a separate order entered herein.

In the event the defendant is ordered to serve additional split sentences, all incarceration portions shall be satisfied before
the defendant begins service of the supervision terms.

Page ___ of ___

755

Defendant _Lee R. Patterson_____    Case Number _97-17(-CF____

## SPECIAL PROVISIONS

(As to Count __I__ )

By appropriate notation, the following provisions apply to the sentence imposed:

### Mandatory/Minimum Provisions:

**Firearm** ____ It is further ordered that the 3-year minimum imprisonment provisions of section 775.087(2), Florida Statutes, is hereby imposed for the sentence specified in this count.

**Drug Trafficking** ____ It is further ordered that the _____" mandatory minimum imprisonment provisions of section 893.135(1), Florida Statutes, is hereby imposed for the sentence specified in this count.

**Controlled Substance Within 1,000 Feet of School** ____ It is further ordered that the 3-year minimum imprisonment provisions of section 893.13(1)(e)1, Florida Statutes, is hereby imposed for the sentence specified in this count.

**Habitual Felony Offender** ____ The defendant is adjudicated a habitual felony offender and has been sentenced to an extended term in accordance with the provisions of section 775.084(4)(a), Florida Statutes. The requisite findings by the court are set forth in a separate order or stated on the record in open court.

**Habitual Violent Felony Offender** ____ The defendant is adjudicated a habitual violent felony offender and has been sentenced to an extended term in accordance with the provisions of section 775.084(4)(b), Florida Statutes. A minimum term of _____ year(s) must be served prior to release. The requisite findings of the court are set forth in a separate order or stated on the record in open court.

**Law Enforcement Protection Act** ____ It is further ordered that the defendant shall serve a minimum of ____ years before release in accordance with section 775.0823, Florida Statutes.

**Capital Offense** ____ It is further ordered that the defendant shall serve no less than Life in accordance with the provisions of section 775.082(1), Florida Statutes.

**Short-Barreled Rifle, Shotgun, Machine Gun** ____ It is further ordered that the 5-year minimum provisions of section 790.221(2), Florida Statutes, are hereby imposed for the sentence specified in this count.

**Continuing Criminal Enterprise** ____ It is further ordered that the 25-year minimum sentence provisions of section 893.20, Florida Statutes, are hereby imposed for the sentence specified in this count.

### Other Provisions:

**Retention of Jurisdiction** ____ The court retains jurisdiction over the defendant pursuant to section 947.16(3), Florida Statutes (1983).

**Jail Credit** XX It is further ordered that the defendant shall be allowed a total of _363_ days as credit for time incarcerated before imposition of this sentence.

**Prison Credit** ____ It is further ordered that the defendant be allowed credit for all time previously served on this count in the Department of Corrections prior to resentencing.

Page ___ of ___

756

Defendant _Ace R. Patterson_____ Case Number __97-171-CF_____

Other Provisions, continued:

**Consecutive/Concurrent**
**As To Other Counts**

__✓__ It is further ordered that the sentence imposed for this count shall run
(check one) ____ consecutive to _✓_ concurrent
with the sentence set forth in count ___11____ of this case.

**Consecutive/Concurrent**
**As To Other Convictions**

____ It is further ordered that the composite term of all sentences imposed for the counts
specified in this order shall run
(check one) ____ consecutive to ____ concurrent
with the following:
(check one)

____ any active sentence being served.

__✓__ specific sentences: _The sentence in this_
_Count is Consecutive to the_
_Sentence in Ct 4._

In the event the above sentence is to the Department of Corrections, the Sheriff of ___MADISON_____
County, Florida, is hereby ordered and directed to deliver the defendant to the Department of Corrections at the facility
designated by the department together with a copy of this judgment and sentence and any other documents specified by
Florida Statute.

The defendant in open court was advised of the right to appeal from this sentence by filing notice of appeal within
30 days from this date with the clerk of this court and the defendant's right to the assistance of counsel in taking the appeal
at the expense of the State on showing of indigency.

In imposing the above sentence, the court further recommends _____
_____
_____
_____

DONE AND ORDERED in open court at _____ MADISON,      MADISON _____ County, Florida,
this _____14th__ day of _____ July _____, 19 98

JOHN W. PEACH                    Judge

757

Page ___ of ___

Defendant _Lee R. Pattersa_ Case Number _99-111-C_ OBTS Number _000 9846985_

## SENTENCE

(As to Count _II_)

The defendant, being personally before this court, accompanied by the defendant's attorney of record, _____
_Dennis Boothe_____, and having been adjudicated guilty herein, and the court having given the defendant an opportunity to be heard and to offer matters in mitigation of sentence, and to show cause why the defendant should not be sentenced as provided by law, and no cause being shown

(Check one if applicable.)

____ and the Court having on _____ deferred imposition of sentence until this date
            (date)

____ and the Court having previously entered a judgment in this case on _____ now resentences
the defendant                                         (date)

____ and the Court having placed the defendant on probation/community control and having subsequently revoked the defendant's probation/community control.

It Is The Sentence Of The Court that:

____ The defendant pay a fine of $_____, pursuant to section 775.083, Florida Statutes, plus $_____
as the 5% surcharge required by section 960.25, Florida Statutes.

XX  The defendant is hereby committed to the custody of the Department of Corrections.

____ The defendant is hereby committed to the custody of the Sheriff of _____County, Florida.

____ The defendant is sentenced as a youthful offender in accordance with section 958.04, Florida Statutes.
____ The defendant is determined to be a Sexual Predator pursuant to F.S. 775.21 (4)
____ Chemical Castration pursuant to F.S. 794.0325 M.P.A.

To Be Imprisoned (Check one; unmarked sections are inapplicable.):

____ For a term of natural life.

✓ For a term of _311 Months_.

____ Said SENTENCE SUSPENDED for a period of _____ subject to conditions set forth in this order.

If "split" sentence, complete the appropriate paragraph.

____ Followed by a period of _____ on probation/community control under the supervision of the Department of Corrections according to the terms and conditions of supervision set forth in a separate order entered herein.

____ However, after serving a period of _____ imprisonment in _____, the balance of the sentence shall be suspended and the defendant shall be placed on probation/community control for a period of _____ under supervision of the Department of Corrections according to the terms and conditions of probation/community control set forth in a separate order entered herein.

In the event the defendant is ordered to serve additional split sentences, all incarceration portions shall be satisfied before the defendant begins service of the supervision terms.

Page ___ of ___

758

Defendant _Alie R. Patterson_____ Case Number ___77-171-CF_____

## SPECIAL PROVISIONS

(As to Count___112___)

By appropriate notation, the following provisions apply to the sentence imposed:

### Mandatory/Minimum Provisions:

**Firearm**
_____ It is further ordered that the 3-year minimum imprisonment provisions of section 775.087(2), Florida Statutes, is hereby imposed for the sentence specified in this count.

**Drug Trafficking**
_____ It is further ordered that the _____ mandatory minimum imprisonment provisions of section 893.135(1), Florida Statutes, is hereby imposed for the sentence specified in this count.

**Controlled Substance Within 1,000 Feet of School**
_____ It is further ordered that the 3-year minimum imprisonment provisions of section 893.13(1)(e)1, Florida Statutes, is hereby imposed for the sentence specified in this count.

**Habitual Felony Offender**
_____ The defendant is adjudicated a habitual felony offender and has been sentenced to an extended term in accordance with the provisions of section 775.084(4)(a), Florida Statutes. The requisite findings by the court are set forth in a separate order or stated on the record in open court.

**Habitual Violent Felony Offender**
_____ The defendant is adjudicated a habitual violent felony offender and has been sentenced to an extended term in accordance with the provisions of section 775.084(4)(b), Florida Statutes. A minimum term of _____ year(s) must be served prior to release. The requisite findings of the court are set forth in a separate order or stated on the record in open court.

**Law Enforcement Protection Act**
_____ It is further ordered that the defendant shall serve a minimum of _____ years before release in accordance with section 775.0823, Florida Statutes.

**Capital Offense**
_____ It is further ordered that the defendant shall serve no less than Life in accordance with the provisions of section 775.082(1), Florida Statutes.

**Short-Barreled Rifle, Shotgun, Machine Gun**
_____ It is further ordered that the 5-year minimum provisions of section 790.221(2), Florida Statutes, are hereby imposed for the sentence specified in this count.

**Continuing Criminal Enterprise**
_____ It is further ordered that the 25-year minimum sentence provisions of section 893.20, Florida Statutes, are hereby imposed for the sentence specified in this count.

### Other Provisions:

**Retention of Jurisdiction**
_____ The court retains jurisdiction over the defendant pursuant to section 947.16(3), Florida Statutes (1983).

**Jail Credit**
_XX_ It is further ordered that the defendant shall be allowed a total of _363_ days as credit for time incarcerated before imposition of this sentence.

**Prison Credit**
_____ It is further ordered that the defendant be allowed credit for all time previously served on this count in the Department of Corrections prior to resentencing.

Page ___ of ___

759

Defendant _Ale R. Witterson_____ Case Number _____7-791-CF____

Other Provisions, continued:

Consecutive/Concurrent      _✓_ It is further ordered that the sentence imposed for this count shall run
As To Other Counts              (check one) ____ consecutive to _✓_ concurrent
                                      with the sentence set forth in count ____I____ of this case.

Consecutive/Concurrent      _✓_ It is further ordered that the composite term of all sentences imposed for the counts
As To Other Convictions        specified in this order shall run
                                      (check one) ____ consecutive to ____ concurrent
                                      with the following:
                                      (check one)

                                      ____ any active sentence being served.

                                      _✓_ specific sentences: _This sentence in this Count_
                                      _is Consecutive to the sentence in Ct 4_

In the event the above sentence is to the Department of Corrections, the Sheriff of ____MADISON____ County, Florida, is hereby ordered and directed to deliver the defendant to the Department of Corrections at the facility designated by the department together with a copy of this judgment and sentence and any other documents specified by Florida Statute.

The defendant in open court was advised of the right to appeal from this sentence by filing notice of appeal within 30 days from this date with the clerk of this court and the defendant's right to the assistance of counsel in taking the appeal at the expense of the State on showing of indigency.

In imposing the above sentence, the court further recommends _____

_____

_____

_____

DONE AND ORDERED in open court at ____MADISON,____ ____MADISON____ County, Florida, this ___14th___ day of ____July____, 19 98

JOHN W. PEACH                    Judge

760

Page ___ of ___

Defendant _Uca R. Pa̱leaa̱_ Case Number _97-171-CF_ DBTS Number _0009846935_

## SENTENCE

(As to Count _III_ )

The defendant, being personally before this court, accompanied by the defendant's attorney of record, _____
_Dennis Boothe_ , and having been adjudicated guilty herein, and the court having given the defendant
an opportunity to be heard and to offer matters in mitigation of sentence, and to show cause why the defendant should not
be sentenced as provided by law, and no cause being shown

(Check one if applicable.)

_____ and the Court having on _____ deferred imposition of sentence until this date
                          (date)

_____ and the Court having previously entered a judgment in this case on _____ now resentences
the defendant                                              (date)

_____ and the Court having placed the defendant on probation/community control and having subsequently revoked
the defendant's probation/community control.

It Is The Sentence Of The Court that:

_____ The defendant pay a fine of $_____, pursuant to section 775.083, Florida Statutes, plus $_____
as the 5% surcharge required by section 960.25, Florida Statutes.

__XX__ The defendant is hereby committed to the custody of the Department of Corrections.

_____ The defendant is hereby committed to the custody of the Sheriff of _____County, Florida.

_____ The defendant is sentenced as a youthful offender in accordance with section 958.04, Florida Statutes.
_✓_ The defendant is determined to be a Sexual Predator pursuant to F.S. 775.21 (4)
_✓_ Chemical Castration pursuant to F.S. 794.0325 M.P.A.
To Be Imprisoned (Check one; unmarked sections are inapplicable.):

_✓_ For a term of natural life.

_____ For a term of_____.

_____ Said SENTENCE SUSPENDED for a period of _____ subject to conditions set forth in
this order.

If "split" sentence, complete the appropriate paragraph.

_____ Followed by a period of _____ on probation/community control under the supervision of the
Department of Corrections according to the terms and conditions of supervision set forth in a separate order entered
herein.

_____ However, after serving a period of _____ imprisonment in _____, the balance
of the sentence shall be suspended and the defendant shall be placed on probation/community control for a period of
_____ under supervision of the Department of Corrections according to the
terms and conditions of probation/community control set forth in a separate order entered herein.

In the event the defendant is ordered to serve additional split sentences, all incarceration portions shall be satisfied before
the defendant begins service of the supervision terms.

_261_

Page ___ of ___

Defendant _Ake K Patterson_     Case Number _97-171-CF_

## SPECIAL PROVISIONS

(As to Count _II_ )

By appropriate notation, the following provisions apply to the sentence imposed:

### Mandatory/Minimum Provisions:

| | |
|---|---|
| Firearm | ____ It is further ordered that the 3-year minimum imprisonment provisions of section 775.087(2), Florida Statutes, is hereby imposed for the sentence specified in this count. |
| Drug Trafficking | ____ It is further ordered that the _____ mandatory minimum imprisonment provisions of section 893.135(1), Florida Statutes, is hereby imposed for the sentence specified in this count. |
| Controlled Substance Within 1,000 Feet of School | ____ It is further ordered that the 3-year minimum imprisonment provisions of section 893.13(1)(e)1, Florida Statutes, is hereby imposed for the sentence specified in this count. |
| Habitual Felony Offender | ____ The defendant is adjudicated a habitual felony offender and has been sentenced to an extended term in accordance with the provisions of section 775.084(4)(a), Florida Statutes. The requisite findings by the court are set forth in a separate order or stated on the record in open court. |
| Habitual Violent Felony Offender | ____ The defendant is adjudicated a habitual violent felony offender and has been sentenced to an extended term in accordance with the provisions of section 775.084(4)(b), Florida Statutes. A minimum term of _____ year(s) must be served prior to release. The requisite findings of the court are set forth in a separate order or stated on the record in open court. |
| Law Enforcement Protection Act | ____ It is further ordered that the defendant shall serve a minimum of _____ years before release in accordance with section 775.0823, Florida Statutes. |
| Capital Offense | ✓ It is further ordered that the defendant shall serve no less than Life in accordance with the provisions of section 775.082(1), Florida Statutes. |
| Short-Barreled Rifle, Shotgun, Machine Gun | ____ It is further ordered that the 5-year minimum provisions of section 790.221(2), Florida Statutes, are hereby imposed for the sentence specified in this count. |
| Continuing Criminal Enterprise | ____ It is further ordered that the 25-year minimum sentence provisions of section 893.20, Florida Statutes, are hereby imposed for the sentence specified in this count. |

### Other Provisions:

| | |
|---|---|
| Retention of Jurisdiction | ____ The court retains jurisdiction over the defendant pursuant to section 947.16(3), Florida Statutes (1983). |
| Jail Credit | XX It is further ordered that the defendant shall be allowed a total of _363_ days as credit for time incarcerated before imposition of this sentence. |
| Prison Credit | ____ It is further ordered that the defendant be allowed credit for all time previously served on this count in the Department of Corrections prior to resentencing. |

762

Page ___ of ___

Defendant _Ace P. _____  Case Number _____-CF

## Other Provisions, continued:

**Consecutive/Concurrent As To Other Counts** ____ It is further ordered that the sentence imposed for this count shall run (check one) ____ consecutive to ____ concurrent with the sentence set forth in count _____ of this case.

**Consecutive/Concurrent As To Other Convictions** ____ It is further ordered that the composite term of all sentences imposed for the counts specified in this order shall run (check one) ____ consecutive to ____ concurrent with the following:
(check one)

____ any active sentence being served.

____ specific sentences:_____

_____

_____

_____

In the event the above sentence is to the Department of Corrections, the Sheriff of ____ MADISON ____ County, Florida, is hereby ordered and directed to deliver the defendant to the Department of Corrections at the facility designated by the department together with a copy of this judgment and sentence and any other documents specified by Florida Statute.

The defendant in open court was advised of the right to appeal from this sentence by filing notice of appeal within 30 days from this date with the clerk of this court and the defendant's right to the assistance of counsel in taking the appeal at the expense of the State on showing of indigency.

In imposing the above sentence, the court further recommends _____

_____

_____

_____

DONE AND ORDERED in open court at ____ MADISON, ____ MADISON ____ County, Florida, this ____ 14th ____ day of ____ July ____ 19 98

JOHN W. PEACH                    Judge

763

Page ___ of ___

Defendant _Leo R. Pierson_ Case Number _97-771-C_ DBTS Number _0009846935_

## SENTENCE

### (As to Count __IV__)

The defendant being personally before this court, accompanied by the defendant's attorney of record, _____ _Dennis Boathe_, and having been adjudicated guilty herein, and the court having given the defendant an opportunity to be heard and to offer matters in mitigation of sentence, and to show cause why the defendant should not be sentenced as provided by law, and no cause being shown

(Check one if applicable.)

____ and the Court having on _____ deferred imposition of sentence until this date
(date)

____ and the Court having previously entered a judgment in this case on _____ now resentences the defendant
(date)

____ and the Court having placed the defendant on probation/community control and having subsequently revoked the defendant's probation/community control.

It Is The Sentence Of The Court that:

____ The defendant pay a fine of $_____, pursuant to section 775.083, Florida Statutes, plus $ _____ as the 5% surcharge required by section 960.25, Florida Statutes.

_XX_ The defendant is hereby committed to the custody of the Department of Corrections.

____ The defendant is hereby committed to the custody of the Sheriff of _____ County, Florida.

____ The defendant is sentenced as a youthful offender in accordance with section 958.04, Florida Statutes.

_✓_ The defendant is determined to be a Sexual Predator pursuant to F.S. 775.21 (4)
_✓_ Chemical Castration pursuant to F.S. 794.0325 M.P.A.

To Be Imprisoned (Check one; unmarked sections are inapplicable.):

_✓_ For a term of natural life.

____ For a term of _____.

____ Said SENTENCE SUSPENDED for a period of _____ subject to conditions set forth in this order.

If "split" sentence, complete the appropriate paragraph.

____ Followed by a period of _____ on probation/community control under the supervision of the Department of Corrections according to the terms and conditions of supervision set forth in a separate order entered herein.

____ However, after serving a period of _____ imprisonment in _____, the balance of the sentence shall be suspended and the defendant shall be placed on probation/community control for a period of _____ under supervision of the Department of Corrections according to the terms and conditions of probation/community control set forth in a separate order entered herein.

In the event the defendant is ordered to serve additional split sentences, all incarceration portions shall be satisfied before the defendant begins service of the supervision terms.

764

Page ___ of ___

Defendant _Ace R. Patterson_    Case Number _97-171-CF_

## SPECIAL PROVISIONS

(As to Count __IV__ )

By appropriate notation, the following provisions apply to the sentence imposed:

### Mandatory/Minimum Provisions:

Firearm  ____ It is further ordered that the 3-year minimum imprisonment provisions of section 775.087(2), Florida Statutes, is hereby imposed for the sentence specified in this count.

Drug Trafficking  ____ It is further ordered that the _____ mandatory minimum imprisonment provisions of section 893.135(1), Florida Statutes, is hereby imposed for the sentence specified in this count.

Controlled Substance Within 1,000 Feet of School  ____ It is further ordered that the 3-year minimum imprisonment provisions of section 893.13(1)(e)1, Florida Statutes, is hereby imposed for the sentence specified in this count.

Habitual Felony Offender  ____ The defendant is adjudicated a habitual felony offender and has been sentenced to an extended term in accordance with the provisions of section 775.084(4)(a), Florida Statutes. The requisite findings by the court are set forth in a separate order or stated on the record in open court.

Habitual Violent Felony Offender  ____ The defendant is adjudicated a habitual violent felony offender and has been sentenced to an extended term in accordance with the provisions of section 775.084(4)(b), Florida Statutes. A minimum term of _____ year(s) must be served prior to release. The requisite findings of the court are set forth in a separate order or stated on the record in open court.

Law Enforcement Protection Act  ____ It is further ordered that the defendant shall serve a minimum of _____ years before release in accordance with section 775.0823, Florida Statutes.

Capital Offense  ✓ It is further ordered that the defendant shall serve no less than Life in accordance with the provisions of section 775.082(1), Florida Statutes.

Short-Barreled Rifle, Shotgun, Machine Gun  ____ It is further ordered that the 5-year minimum provisions of section 790.221(2), Florida Statutes, are hereby imposed for the sentence specified in this count.

Continuing Criminal Enterprise  ____ It is further ordered that the 25-year minimum sentence provisions of section 893.20, Florida Statutes, are hereby imposed for the sentence specified in this count.

### Other Provisions:

Retention of Jurisdiction  ____ The court retains jurisdiction over the defendant pursuant to section 947.16(3), Florida Statutes (1983).

Jail Credit  XX It is further ordered that the defendant shall be allowed a total of _363_ days as credit for time incarcerated before imposition of this sentence.

Prison Credit  ____ It is further ordered that the defendant be allowed credit for all time previously served on this count in the Department of Corrections prior to resentencing.

765

Page ___ of ___

Defendant _____ Case Number _____

## Other Provisions, continued:

**Consecutive/Concurrent As To Other Counts**  ✓ It is further ordered that the sentence imposed for this count shall run (check one) ✓ consecutive to ____ concurrent with the sentence set forth in count ___III___ of this case.

**Consecutive/Concurrent As To Other Convictions**  ____ It is further ordered that the composite term of all sentences imposed for the counts specified in this order shall run (check one) ____ consecutive to ____ concurrent with the following:
(check one)

____ any active sentence being served.

____ specific sentences:_____
_____
_____
_____

In the event the above sentence is to the Department of Corrections, the Sheriff of ____MADISON____ County, Florida, is hereby ordered and directed to deliver the defendant to the Department of Corrections at the facility designated by the department together with a copy of this judgment and sentence and any other documents specified by Florida Statute.

The defendant in open court was advised of the right to appeal from this sentence by filing notice of appeal within 30 days from this date with the clerk of this court and the defendant's right to the assistance of counsel in taking the appeal at the expense of the State on showing of indigency.

In imposing the above sentence, the court further recommends _____
_____
_____
_____
_____

DONE AND ORDERED in open court at ____MADISON,____ ____MADISON____ County, Florida, this ___14___ day of ___July___, 19_98_.

_____
JOHN W. PEACH          Judge

766

Page ___ of ___

# Appendix B

FILED FOR RECORD
CLERK

2009 DEC 14  PM 4:06

TIM SANDERS, CLERK

BY_____D.C.

IN THE CIRCUIT COURT OF THE
THIRD JUDICIAL CIRCUIT OF
FLORIDA IN AND FOR MADISON
COUNTY, FLORIDA

CASE NO. 97-000171-CF

STATE OF FLORIDA

-vs-

ACE ROBERT PATTERSON,

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO CORRECT ILLEGAL SENTENCE

THIS MATTER, having come on to be heard before the Court on the Defendant's

Motion to Correct Illegal Sentence, the State having acknowledged the Factual

Sufficiency of Same and the Court being otherwise fully informed in the premises, finds

as follows:

1.  The Defendant is currently serving a sentence of 311.7 months for

    Count 1 Burglary of a Dwelling Person Assaulted and a concurrent

    311.7 months for Count 2 Kidnapping and in Count 3 and 4 Capital

    Sexual Battery, the Defendant is serving Life sentences with Count 4

    consecutive to Count 3.  The Defendant was also ordered to undergo

    Medroxypragestrone Acetate (MPA) injection also known as chemical

    castration.

2.  The Defendant filed a Motion to Correct an Illegal Sentence alleging

    that the Court did not comply with requirements of law when it

    sentenced him to be "Chemically Castrated" as the Court did not

    appoint a medical expert to determine whether the defendant was an

appropriate candidate for said "Chemical Castration" within 60 days required by Florida Statute 794.0235. Nor did the Court specify the duration of said treatment as required by Florida Statute 794.0135.

3.    The State has conceded that the Defendant's motion is "Factually Sufficient" and stipulates to the Defendant's motion in light of the Defendant's consecutive Life sentences in the above styled matter.

4.    Guardian-Ad-Litem Linda Dagget, Circuit Director of the Guardian-Ad-Litem's office in Live Oak, Florida, has been contacted by the State and she agrees with the States Stipulation to the Defendant's motion as it is a moot issue in light of the Defendant's consecutive Life sentences. Further, the Guardian-Ad-Litem on behalf of the victim, does not want to expose the victim to the painful remembrance of the Defendant's actions against her by having a contested hearing on an issue that is a "moot point".

**IT IS THEREFORE,**

**ORDERED AND ADJUDGED,** the Defendant's Motion to Correct an Illegal Sentence is GRANTED and the Defendant shall not have to undergo Medroxypragestrone Acetate (MPA) injection, also known as "Chemical Castration" as previously ordered by the Court at his sentencing in the above styled matter.

**DONE AND ORDERED** in chambers at Madison, Madison County, Florida this 14 day of December, 2009.

GREGORY S. PARKER
CIRCUIT JUDGE

# Appendix C

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

258

CORRECTED

**CRIMINAL DIVISION**

SENTENCE
(AS TO COUNT ____1____)
( _____ )

THE STATE OF FLORIDA          VS.   MITCHEL ANDRE
                                     INSIGNARES

**PLAINTIFF**                        **DEFENDANT**

CASE NUMBER: F00-21361        OBTS NUMBER _____

CLOCK IN

2009 MAY 22 PM 4:10

The defendant, being personally before this Court, accompanied by his attorney, _____, and having been adjudicated guilty herein, and the Court having given the defendant an opportunity to be heard and to offer matters in mitigation of sentence, and to show cause why he should not be sentenced as provided by law, and no cause being shown and the Court having:

☐ on _____ deferred imposition of sentence until this date.

(Check one) ☐ previously entered a judgment in this case on the defendant now resentences the defendant.

☐ placed the defendant on Probation/Community Control and having subsequently revoked the defendant's Probation/Community Control.

IT IS THE SENTENCE OF THE COURT that the defendant:

☐ pay a fine of $ _____, pursuant to F.S. 775.083, plus $ _____ as the 5% surcharge required by F.S. 938.04.

☒ is hereby committed to the custody of the Department of Corrections.

☐ is hereby committed to the custody of the Sheriff of Miami-Dade County, Florida.

☐ is sentenced as a youthful offender in accordance with F.S. 958.04.

TO BE IMPRISONED (check one; unmarked sections are inapplicable)

☐ for a term of Natural Life.

☒ for a term of TWENTY SEVEN (27) YEARS _____.

☐ said SENTENCE IS SUSPENDED for a period of _____ subject to conditions set forth in this Order.

☐ IT IS FURTHER ORDERED that the entry of sentence be suspended as to count(s) _____ of this case.

CLK/CT 405 REV. 4/03          **(1) PAGE __1__ OF __3__**    Clerk web address: www.miami-dadeclerk.com

DB  5/20/09

RECORDED

Defendant _____ MITCHEL ANDRE INSIGNARES _____

Case Number _____ F00-21361 _____

| | |
|---|---|
| If "split" sentence complete either of paragraphs | _____ Followed by a period of_____ on Probation/Community Control under the supervision of the Department of Corrections according to the terms and conditions of supervision set forth in a separate order entered herein. |
| | _____ However, after serving a period of _____ imprisonment in _____, the balance of such sentence shall be suspended and the Defendant shall be placed on Probation/Community Control for a period of _____ under supervision of the Department of Corrections according to the terms and conditions of Probation/Community Control set forth in a separate order entered herein. |

In the event the defendant is ordered to serve additional split sentences, all incarceration portions shall be satisfied before the defendant begins service of the supervision terms.

## SPECIAL PROVISIONS

( As to Count _____ 1 _____ )

By appropriate notation, the following provisions apply to the sentence imposed:
**MANDATORY / MINIMUM PROVISIONS:**

**FIREARM:**
   **X** Possession
_____ Discharged
_____ Discharged causing great bodily harm

**SEMI-AUTOMATIC FIREARM OR MACHINE GUN:**
_____ Possession
_____ Discharged
_____ Discharged causing great bodily harm

It is further ordered that the _____ 10 _____ mandatory minimum imprisonment provisions of Florida Statute 775.087(2) are hereby imposed for the sentence specified in this count.

**DRUG TRAFFICKING:** _____ It is further ordered that the _____ mandatory minimum imprisonment provisions of Florida Statute 893.135(1) are hereby imposed for the sentence specified in this count.

**CONTROLLED SUBSTANCE WITHIN 1000 FEET OF SCHOOL:** _____ It is further ordered that the three year minimum imprisonment provisions of Florida Statute 893.13(1)(e)1, are hereby imposed for the sentence specified in this court.

**FELONY OFFENDER:** _____ The defendant is adjudicated a
_____ habitual violent felony offender
_____ violent career criminal
and has been sentenced to an extended term in accordance with the provisions of Florida Statute 775.084(4). A minimum term of _____ year(s) must be served prior to release. The requisite findings by the court are set forth in a separate order or stated on the record in open court.

**REPEAT SEXUAL OFFENDER:** _____ It is further ordered that the defendant shall serve a minimum of _____ years before release in accordance with Florida Statute 775.0823.

**LAW ENFORCEMENT PROTECTION ACT:** _____ AGGRAVATED ASSAULT UPON LAW ENFORCEMENT OFFICER
_____ AGGRAVATED BATTERY UPON LAW ENFORCEMENT OFFICER
It is further ordered that the defendant shall serve a minimum of:
_____ 3 years provision of Florida Statute 784.07(2)(c)
_____ 5 years provision of Florida Statute 784.07(2)(d)

**AGGRAVATED ASSAULT or UPON PERSON YEARS OF AGE:** _____ It is further ordered that the defendant shall serve a minimum of three years or **BATTERY** imprisonment before release, pay a fine of $_____, complete **OVER 65** _____ hours of community service and make restitution to the victim in accordance with Florida Statute 784.08.

**CAPITAL OFFENSE** _____ It is further ordered that the Defendant shall serve no less than 25 years in accordance with Florida Statute 775.082(1).

**PRISON RELEASE** _____ The defendant is adjudicated a Prison Release Reoffender and has been **REOFFENDER:** sentenced to a maximum term in accordance with the provision of Florida Statute 775.082(8). It is further ordered that the Defendant shall not be released until the expiration of the sentence.

OTHER PROVISIONS

RETENTION OF
JURISDICTION _____ The Court retains jurisdiction over the defendant pursuant to Florida Statutes 947.16(3).

JAIL CREDIT ___**X**___ It is further ordered that the Defendant shall be allowed a total of ___429___ days as credit for time incarcerated prior to imposition of this sentence.

PRISON CREDIT _____ It is further ordered that the Defendant be allowed credit for all time previously served on this count in the Department of Corrections prior to resentencing.

CONSECUTIVE/
CONCURRENT AS TO
OTHER COUNTS _____ It is further ordered that the sentence imposed for count(s) _____ shall run (check one) ☐ consecutive to ☐ concurrent with the sentence set forth in count(s)_____ of this case.

CONSECUTIVE/
CONCURRENT AS TO
OTHER CONVICTIONS _____ It is further ordered that the composite term of all sentences imposed for the counts specified in this order shall run ☐ consecutive to ☐ concurrent with the following:

_____ Any active sentence being served.

_____ Specific sentences: _____

_____

_____

BLOOD SAMPLE
REQUIRED _____ It is further ordered, pursuant to section 943.325, Florida Statutes, that the defendant, having been convicted of an attempt or offense under section 794 (sexual battery), 800 (lewdness or indecent exposure), 782.04 (murder), 784.045 (aggravated battery), 812.133 (car jacking), or 812.135 (home invasion robbery) shall be required to submit blood specimens.

In the event the above sentence is to the Department of Corrections, the Sheriff of Miami-Dade County, Florida,is hereby ordered and directed to deliver the defendant to the Department of Corrections at the facility designated by the Department together with a copy of this Judgment and Sentence and any other documents specified by Florida Statutes.

The defendant in Open Court was advised of his right to appeal from this sentence by filing notice of appeal within thirty days from this date with the Clerk of this Court, and the defendant's right to the assistance of counsel in taking said appeal at the expense of the State upon showing of indigence.

In imposing the above sentence, the Court further recommends_____

_____

_____

_____

DONE AND ORDERED in Open Court at Dade County,Florida this ___07___ day of ___MAY___ , 20 _09_.

_____
JUDGE ORLANDO A PRESCOTT